**STATE of Minnesota, Respondent,**

v.

**Heather Marie NELSON, Appellant.**

**No. A10–1382.**

Court of Appeals of Minnesota.

March 22, 2011.

Lori Swanson, Attorney General, St. Paul, MN, Ross E. Arneson, Blue Earth County Attorney, Michael A. Hanson, Assistant County Attorney, Mankato, MN, for respondent.

Silas L. Danielson, Blethen, Gage & Krause, PLLP, Mankato, MN, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge; JOHNSON, Chief Judge; and LARKIN, Judge.

## OPINION

KLAPHAKE, Judge.

Appellant Heather Marie Nelson challenges the district court's order requiring her to pay $19,412 as restitution for her misdemeanor theft of tanning services from a Mankato tanning salon. We affirm the district court's decision to award resti-tution but modify that award by reducing it to $156, the amount of claimed loss that was caused by appellant's criminal conduct.

## FACTS

On August 20, 2006, C.F., the owner of the tanning salon, discovered that one of her employees was tanning for free after her work shifts ended. The tanning salon used a computer software program to record client tanning sessions and to track cash flow related to client accounts. The employee, Leita Ann Baker, had not recorded her after-hours tanning sessions on the computer program. Baker was immediately fired by C.F.

After conducting an extensive investigation of employee time records and tanning logs, C.F. discovered that three other employees, including appellant, Sarah Maree Pierce, and Jessica Marie Lynn, had also been taking free tans and giving them to others. In order to accomplish this, they created fictitious tanning accounts, added tanning packages or other "add-ons" to those accounts or existing accounts and later deleted the accounts or the add-ons, manipulated the computer software to award free tans, rang up tans at no charge, and engaged in other similar conduct. According to C.F., she lost $7,700 in revenue as a result of the employees' conduct.

On September 20, 2006, C.F. fired appellant. Nearly three years later, on September 2, 2009, appellant was charged with one count of felony theft-by-swindle under Minn.Stat. § 609.52, subd. 2(4) (2006) (value exceeding $2,500) for her conduct occurring between February 4, 2006, and August 4, 2006, and one count of misdemeanor theft under Minn.Stat. § 609.52, subd. 2(4) (2006) (value not to exceed $250) for her conduct occurring between August 5, 2006, and September 30, 2006. The

state alleged that appellant stole services worth $2,873 between February 5, 2006, and August 4, 2006, and stole services worth $156 between August 5, 2006, and the end of September 2006.

In December 2009, appellant moved to dismiss the felony theft by swindle count because the complaint was not filed within three years of commission of the offense, as required by Minn.Stat. § 628.26(k) (2008) (requiring felony theft complaint involving amount less than $35,000 to be filed in district court within three years after commission of the offense). The district court dismissed the felony count against appellant on December 22, 2010, and dismissed all criminal charges against appellant's three former coworkers for the same reason.

Thereafter, appellant pleaded guilty to the remaining misdemeanor theft count. Her plea agreement states that between August 5, 2006, and September 30, 2006, she "tanned at the business while still on the clock." Among other things, she agreed "to pay restitution" and to allow the court to "determine the amount of restitution." In accordance with the plea agreement, the district court stayed adjudication for two years and reserved the issue of restitution.

C.F. submitted an affidavit of restitution that stated a total net loss of $24,412, which included $690 for new computer software, $700 for a new computer hard drive and tower, $7,668 for the value of stolen tanning services, $2,604 for employee hours to reconstruct and verify the thefts by cross-referencing daily reports to customer accounts and tanning packages, and $12,750 in "personal hours" related to the thefts. Appellant submitted an affidavit in opposition to C.F.'s claim, arguing that respondent had offered evidence that during the viable charging period, she had

stolen only one tan, on September 16, 2009, valued at $26.

C.F. testified at the restitution hearing. She stated that although the tanning salon's computer was not broken or damaged by appellant's conduct, she needed to replace the computer and software to regain control of the business. She also explained how she documented the amounts of the thefts and the time required to verify those amounts. Appellant did not testify at the hearing, nor did she offer evidence on her ability to pay restitution.

The district court ordered appellant to pay restitution of $19,412, which was the total amount claimed by C.F., less $5,000 she received in insurance proceeds. The district court stated that appellant "and codefendants should be jointly and severally liable for restitution to [C.F.]" The district court's order did not include any findings on appellant's ability to pay restitution.

This court granted appellant's petition for discretionary review.

## ISSUE

Did the district court abuse its discretion by ordering appellant to pay restitution of $19,412 for the misdemeanor theft offense to which she pleaded guilty?

## ANALYSIS

"The primary purpose of the [restitution] statute is to restore crime victims to the same financial position they were in before the crime." *State v. Palubicki,* 727 N.W.2d 662, 666 (Minn.2007). A district court may not use restitution as a form of punitive damages. *State v. Pflepsen,* 590 N.W.2d 759, 769 (Minn.1999) (stating "Restitution is intended to be compensatory, not punitive."). "A district court's order for restitution is reviewed under an abuse of discretion standard. But determining whether an item meets

the statutory requirements for restitution is a question of law that is fully reviewable by the appellate court." *State v. Ramsay*, 789 N.W.2d 513, 517 (Minn.App.2010) (quotation omitted) (citing *State v. Tenerelli*, 598 N.W.2d 668, 671 (Minn.1999)); *see In re Welfare of M.R.H.*, 716 N.W.2d 349, 351 (Minn.App.2006) (stating that appellate court reviews as a question of law whether a particular item is eligible for restitution under restitution statute), *review denied* (Minn. Aug. 15, 2006).

▮ Under the restitution statute, a victim may request restitution for a specific loss if the defendant is convicted of a crime. Minn.Stat. § 611A.04, subd. 1(a) (2010). A request for restitution "may include, but is not limited to, any out-of-pocket losses resulting from the crime." *Id.* However, a loss claimed as an item of restitution by a crime victim must have some factual relationship to the crime committed—a compensable loss must be "directly caused by the conduct for which the defendant was convicted." *State v. Latimer*, 604 N.W.2d 103, 105 (Minn.App.1999) (quotation omitted); *see State v. Olson*, 381 N.W.2d 899, 901 (Minn.App.1986) (holding that restitution is proper for "victim's losses [that] are directly caused by appellant's conduct for which he was convicted"); *see also Ramsay*, 789 N.W.2d at 517 (reversing restitution award that "far exceeds the loss attributable to the offense of which [the defendant] was convicted"); *State v. Chapman*, 362 N.W.2d 401, 404 (Minn.App. 1985) (stating that district court may not order restitution that exceeds the terms of a plea agreement "on counts dismissed pursuant to the plea, for which the plea itself does not provide a factual basis"), *review denied* (Minn. May 1, 1985). "The burden of demonstrating the amount of loss sustained by a victim as a result of the offense and the appropriateness of a particular type of restitution is on the prosecution." Minn.Stat. § 611A.045, subd 3(a) (2010). The amount of restitution, when disputed, must be proved by a preponderance of the evidence. *Id.* Finally, although the district court "shall" consider the "income, resources, and obligations of the defendant," Minn.Stat. § 611A.045, subd. 1(a) (2010), the statute does not require the court to make specific findings on an offender's ability to pay restitution.

*Amount of Restitution*

▮ Appellant argues that the amount of the restitution award is impermissibly inflated because the district court erroneously ordered her to pay restitution for conduct for which she was not responsible. In *Ramsay*, the defendant pleaded guilty to a lesser-included theft charge. Dismissed charges were not addressed at the defendant's plea hearing, nor did she offer either a factual basis for the plea or admissions that would have supported the dismissed charges. 789 N.W.2d at 517. There, we concluded that the district court abused its discretion by refusing to consider the victim's agreement in a separate civil action that $20,000 was a reasonable amount to compensate the victim for her losses, and by awarding a restitution amount that "far exceeds the loss attributable to the offense of which she was convicted." *Id.* at 518; *see also Latimer*, 604 N.W.2d at 105–06 (holding that defendant who pleaded guilty to being an accomplice after the fact to murder could be required to pay restitution only for losses directly caused by her actions as an accessory and not for losses resulting from the murder).

▮ We conclude that the district court here likewise erred by including as restitution numerous items of loss that were not directly caused by appellant's conduct. Appellant pleaded guilty to misdemeanor theft for conduct occurring between August 5, 2006, and September 30, 2006.

However, the bulk of the losses attributable to her conduct for which the district court ordered restitution occurred before this period. The restitution order notes that "due to applicable statute of limitations, little of [the] lost fees can be considered for restitution purposes," but the court included those very fees in the restitution order and did not differentiate between losses resulting from appellant's conduct that occurred before and those that occurred during the charging period in setting the amount of restitution. The district court erred by including losses in the restitution award that were attributable to appellant's conduct that occurred before the charging period.

The district court also included losses flowing from the conduct of appellant's three former coworkers in the restitution award. The court's restitution order states that appellant "and codefendants should be jointly and severally liable for restitution." This aspect of the restitution order is not in accordance with the restitution statute, which permits restitution for "out-of-pocket losses resulting from *the crime.*" Minn.Stat. § 611A.04, subd. 1(a) (emphasis added). All criminal charges were dismissed against appellant's three former coworkers, and appellant was not shown to be responsible for their conduct. Thus, appellant could not be required to pay restitution for economic losses that were either caused solely by her three former coworkers or that represented amounts that did not differentiate between her conduct and the conduct of her former coworkers. For these losses, respondent failed to meet its burden to prove that the losses were caused by appellant's conduct.

■ Moreover, the district court's award of restitution "to replace the computer and programs and to account for the theft of services" was also erroneous because it did not constitute an economic loss

for purposes of restitution. In order to be compensable as restitution, an economic loss must be "sustained by the victim as a result of the offense." Minn.Stat. § 611A.045, subd. 1(a)(1). C.F. admitted at the restitution hearing that none of the employees broke or damaged her computer or software system; she claimed only that they bypassed the computer software to conduct their crimes. Because appellant did not damage C.F.'s computer, the district court's determination that "[C.F.] was compelled to replace the computer and the programs" is unsupported by the evidence. Any deficiencies in the original computer and its software were unrelated to appellant's crime.

■ Finally, the total amount of time C.F. claimed for her own investigation of all of the conduct involving appellant and her three former coworkers was 1,647 hours. This claimed amount would constitute more than 41 weeks of full-time employment. Under any reasonable measure, this amount of investigative time was excessive, and it failed to identify the portion of that time that pertained to appellant's current offense. As such, respondent also failed to meet its burden to establish that this item of loss was caused by conduct for which appellant pleaded guilty.

■ For all of these reasons, we conclude that the district court erred by including these items as losses for purposes of calculating restitution and, therefore, abused its discretion by awarding restitution in the astounding amount of $19,412. After pleading guilty to the misdemeanor offense, appellant asserted, in conjunction with the restitution hearing, that the value of her stolen tan was $26. But her plea of guilty was predicated on a theft that the state valued at $156, and at oral argument before this court she conceded that she was responsible for at least this amount in

restitution and had the ability to pay it. Under these circumstances, we modify the restitution award by reducing it to $156.

*Appellant's Ability to Pay Restitution*

 Another aspect of the restitution order that bears scrutiny is the district court's consideration of appellant's ability to pay restitution. At the time of appellant's offense, she was a 20–year–old college student. The district court record includes no reference to her ability to pay restitution. However, the statutory procedure required for issuance of a valid order of restitution contains the following mandate: "The court, in determining whether to order restitution and the amount of the restitution, shall consider the following factors: (1) the amount of economic loss sustained by the victim as a result of the offense; and (2) the income, resources, and obligations of the defendant." Minn.Stat. § 611A.045, subd. 1(a)(1), (2). According to the restitution hearing transcript, which includes C.F.'s testimony regarding her economic losses, the district court did not address whether appellant had the ability to pay restitution. Further, the record does not include a presentence investigation report and is devoid of any other evidence that would have established appellant's ability to pay restitution. Because appellant conceded at oral argument before this court that she could pay $156 in restitution, we will affirm an award of $156, as discussed previously. But we remind the district court that it retains a duty to consider an offender's ability to pay restitution, even though it has no specific obligation to make findings on an offender's ability to pay it.

## DECISION

The district court erred by including in its restitution award items of loss that were not directly caused by the conduct for which appellant was convicted. Therefore, the district court's order for restitution in the amount of $19,412 was an abuse of discretion. We affirm the district court's decision to award restitution, but we reduce the amount of the award to $156, which represents the amount of restitution that appellant conceded she was responsible for and has the ability to pay.

**Affirmed as modified.**